Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6496 | **DATE** | 3/3/2003 |
| **CASE TITLE** | Great Oak, L.L.C. vs. Begley Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  ENTER MEMORANDUM OPINION AND ORDER: the Court denies Defendant's motion to dismiss Counts I-III but grants Defendant's motion to dismiss as to Counts IV-VII. [5-1]. STATUS HEARING SET FOR 3/14/03 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR - 5 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 9 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | | |
| TBK | courtroom deputy's initials | 03 MAR -4 AM 9:00 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREAT OAK, L.L.C., | ) |
| | ) 02 C 6496 |
| Plaintiff, | ) |
| v. | ) Judge Ronald A. Guzman |
| | ) |
| | ) Magistrate Judge Nolan |
| BEGLEY COMPANY, | ) |
| | ) |
| Defendant. | ) |

**DOCKETED**
MAR 5 2003

## MEMORANDUM OPINION AND ORDER

Pending is Defendant Begley Company, L.L.C.'s motion to dismiss counts I-VII of Plaintiff's complaint. For the reasons provided in this Memorandum Opinion and Order, Defendant's motion is granted in part and denied in part.

## FACTS

Plaintiff, Great Oak, L.L.C., owns a shopping center in Kankakee, Illinois known as the Meadowview Center. (Pl.'s Compl. 1). The complaint centers on Great Oaks's allegation that Defendant's dry cleaning operations led to the release of hazardous substances into the subsurface soils and groundwater, which allegedly will cause Plaintiff to incur over $2 million in investigation and remediation costs, and will devalue the property.( *Id.*,¶ 9).

Plaintiff bought the Meadowview Center from Brookview Corporation which first leased 57 Meadowview Center to Meadowview 1 Hour Cleaners on September 29, 1975. (*Id.*, ¶1-2). In 1979, this lease was assigned to the Defendant. ( *Id.*, ¶3). The lease was extended in 1985 to provide for two successive five-year periods and again in 1995 for a three-year period bringing the lease term to September 30, 2001. ( *Id.*, ¶4-5).

1

A key term of the lease, which remained the same throughout the extensions of the lease, was paragraph 11 which states:

> Upon acceptance and occupancy of this building by Lessee, it is agreed that Lessee at their own expense will keep all improvements otherwise in good repair (injury by fire, or other causes beyond Lessee's control excepted) as well as in a good tenantable and wholesome condition, and will comply with all local or governmental regulations, laws, and ordinances applicable thereto, as well as lawful requirements of all competent authorities in that behalf. Lessee will, as far as possible, keep said improvements from deterioration due to ordinary wear and from falling temporarily out of repair.

(Pl.'s Compl., Ex. 1).

The dry cleaners that was operated on the premises and owned by Begley used toxic chemicals that where allegedly disposed of improperly and caused environmental damage that had to be, or will have to be, investigated and remediated by the Plaintiff. (Pl.'s Compl., ¶ 9, 11). As a result, Great Oak filed a seven-count complaint. *Id.* Count I alleges breach of lease, mentions paragraph 11 of the lease, and refers to the lease as Exhibit 1. (Pl.'s Compl. ¶1-13). Counts II and III allege Nuisance and Negligence, respectively and Counts IV-VII all allege violations of the Illinois Environmental Protection Act. (Pl.'s Compl., pgs. 4-8).

## **DISCUSSION**

In considering Begley's 12(b)(6) motion to dismiss the Court will accept all well-pleaded allegations as true. *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 372 (7th Cir. 1992). Moreover, this court will consider exhibits to the complaint that are in the form of written instruments as part of the pleadings for the purposes of a motion to dismiss. FRCP 10(c); *see also, Bankcard Am. Inc. v. Universal Bancard Sys. Inc.*, 904 F.Supp. 753 (N.D.Ill. 1995*); Cagan v. Intervest Midwest Real Estate Corp.*, 774 F.Supp. 1089

(N.D.Ill. 1991). After considering all well-pleaded facts, including exhibits in the form of written instruments, this Court will grant a motion to dismiss only where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Cushing v. City of Chicago,* 3 F.3d 1156, 1159 (7th Cir. 1993) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

In Count I, entitled "Breach of Lease," Plaintiff alleges that because of Defendant's "failure to comply with and perform the requirements of Paragraph No. 11 of the Lease" Plaintiff has been damaged in an amount exceeding $2 million. (Compl., Count I, ¶¶ 9-12). Specifically Plaintiff alleges that Defendant's dry cleaning operations led to releases of hazardous substances into the subsurface environment, which violates certain sections of the Illinois Environmental Protection Act, 415 ILCS 5/1 *et seq* thereby breaching paragraph 11. (Complaint, Count I, ¶¶9-12).

## **COUNT I**

Defendant puts forth that Count I fails to state a claim for multiple reasons: (1) Paragraph 11 of the lease applies only to improvements to the real property, and does not encompass a tenant's trade fixtures or personal property at issue here; (2) neither Paragraph 11 nor any other part of the lease says anything about environmental liabilities; (3) a "compliance with laws" provision, standing alone, does not require a tenant to comply with laws requiring substantial corrective measures; and (4) any ambiguities in the scope of Paragraph 11 must be construed against the lessor.

It is undisputed that the Lease fails to specifically address the issue of potential environmental liabilities. Defendant first argues that Plaintiff's complaint fails to state a claim for breach of contract because Paragraph 11, the paragraph Plaintiff relies upon to

3

state a claim for breach of contract relates only to improvements to the property rather than environmental contamination. Defendant argues that Plaintiff's alleged interpretation of Paragraph 11 unnecessarily broadens the scope of the term of the lease as insufficient as a matter of law. We disagree.

Paragraph 11 of the lease provides the following:

> Upon acceptance and occupancy of this building by Lessee, it is agreed that Lessee at their own expense will keep all improvement otherwise in good repair (injury by fire, or other causes beyond Lessees's control excepted) as well as in a good tenantable and wholesome condition, and will comply with all local or general regulations, law and ordinances applicable thereto, as well as lawful requirement of all competent authorities in that behalf. Lessee will, as far as possible, keep said improvements from deterioration due to ordinary wear and from falling temporarily out of repair.

(Lease ¶11, Exhibit A).

In determining the substantive nature of the contract at issue this Court applies Illinois law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 77-80 (1938). In *Quake Construction*, the Illinois Supreme Court upheld the reversal of a trial court's dismissal of an action for breach of contract. *Quake Constr., Inc. v. American Airlines*, 565 N.E.2d 990 (Ill. 1990). The Illinois Supreme Court laid out a clear test for determining whether a contract poses a question of law that can be determined in a motion to dismiss or poses a question of fact that cannot be determined in such a motion. Focusing primarily on whether the contract was ambiguous the Supreme Court explained:

> A [trial court] must initially determine, as a question of law, whether the language of a purported contract is ambiguous as to the parties' intent. If no ambiguity exists in the writing, the parties' intent must be derived by the [trial court], as a matter of law, solely from the writing itself. If the terms of an alleged contract are ambiguous or capable of more than one interpretation, however, parole evidence is admissible to ascertain the parties' intent. If the language of an alleged contract is ambiguous regarding the parties' intent, the interpretation of the language is a question of fact

4

which a [trial court] cannot properly determine on a motion to dismiss. *Quake Constr.*, 565 N.E.2d 990,994, internal citations omitted.

A reasonable reading of Count I of Plaintiff's complaint is that Defendant failed to operate the dry cleaning facility at the leased premises in conformity with the regulations, laws and ordinances relating to the operating of the business. The Language of paragraph 11 requires defendant to conform to all laws, regulations and ordinances applicable to the improvements. Are the environmental laws applicable to the improvements? Did the parties intend to differentiate between the improvements and the use of the improvements? These questions can not be answered by a reading of the language of the contract. Resort must be had to extrinsic evidence as to the intent of the parties. Defendant's motion to dismiss Count I is, therefore, denied.

## COUNTS II AND III

Counts II and III of Plaintiff's complaint set forth claims for nuisance and negligence respectively. Count II alleges that Defendant's actions "unreasonably interfered with Plaintiff's use and enjoyment of [its property] and, therefore, constitute a nuisance." (Complaint, Count II ¶ 13). Count III alleges that Begley's actions in releasing contaminants on site were "negligent and careless." (Complaint, Count III ¶ 13). This Complaint further alleges that, as a result of Begley's actions, Plaintiff has incurred or will incur damages "in excess of $2,000,000, including, but not limited to, costs for investigation, clean-up and remediation and through a diminution in value of the [property]." (Complaint, Count I ¶ 11, incorporated into Counts II and III.) Defendant argues that both of Plaintiff's tort claims are barred by Illinois' economic loss doctrine.

Illinois law generally prohibits recovery in tort for purely economic loss.

5

*Moorman Mfg. Co. v. National Tank Co.*, 435 N.E. 2d 443, 448 (Ill. 1982). In *Moorman*, the court defined "economic loss" as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits–without any claim of personal injury or damage to other property." *Id.* The doctrine is "premised upon the theory that tort law affords a remedy for losses occasioned by personal injuries or damage to one's property, but contract law offers the appropriate remedy for economic losses occasioned by diminished commercial expectations." *Ruscitti v. Atchinson, Topeka & Santa Fe Ry. Co.*, 987 F. Supp. 1039, 1042 (N.D. Ill. 1997).

The Illinois Appellate Court has considered whether purchasers of a property could sue in tort when they discovered that the seller of the property had contaminated the property by allowing underground tanks to leak into the property. *NBD Bank v. Krueger Ringier, Inc.* 686 N.E.2d 704 (Ill. App. 1st Dist., 1997). The Court in reaching its decision examined the economic loss doctrine and how it should be applied to real estate transactions by analyzing the definition of economic loss, the traditional common law application of the doctrine, and the policy reasons behind the doctrine. *Id.*

The *NBD Bank* Court used the *Moorman* Court's definition of economic loss, "inadequate value, costs of repair and replacement of the defective product, and consequent loss of profits, without any claim for personal injury or damage to other property as well as the diminution in the value of the product because it is inferior in quality." *NBD Bank*, 686 N.E.2d 704, 707 (quoting *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E. 2d 443 (Ill. 1982). In addition to analyzing the definition of economic loss, the *NBD Bank* Court addressed the general application of the doctrine in Illinois and noted the following exception to *Moormon's* rule: "At common law, purely economic losses

6

are not recoverable in tort actions except (1) where the plaintiff has sustained personal injury or property damage resulting from a sudden or dangerous occurrence, (2) where the plaintiff's damage's are the proximate result of a defendant's intentional, false representation (fraud), or (3) where the plaintiff's damages area proximate result of a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others." *NBD Bank,* 686 N.E.2d 704,707, internal citations to *Moorman* omitted. Then, citing several cases, the *NBD Bank* Court declared that the "doctrine is premised upon the theory that tort law affords a remedy for losses occasioned by personal injuries or damage to one's property, but contract law...offers the appropriate remedy for economic losses occasioned by diminished commercial expectations not coupled with injury to person or property." 686 N.E.2d 704,708. Finally, the *NBD Bank* Court held that "the economic loss doctrine is applicable to litigation predicated upon real estate transaction." 686 N.E.2d 704,708.

Plaintiff contends that Count II, Nuisance, and Count III, Negligence, are not barred by the economic loss doctrine because Defendant "caused damage to 'other property', namely, the Center." (Pl.'s Resp, pg. 8). Defendant argues that damage to "other property" is not enough and that the damage to "other property" must involve a sudden, calamitous occurrence. (Def.'s Reply, pg. 7).

It does not appear that *Moorman* is applicable to the present case. Although the recovery of solely economic losses "due to defeated expectations of a commercial action" are precluded in a tort action, a tort action is proper when "harm above and beyond disappointed expectations" of a contract are shown. *City of Oakbrook Terrace v. Hinsdale Sanitary Dist.,* 527 N.E.2d 70, 74 (1988). Hence, the pleadings sufficiently

7

allege damage to property to overcome the *Moorman* doctrine. Although it appears that the bulk of Plaintiff's damages are in the nature of economic losses, the complaint alleges damages to Plaintiff's property as well as clean up damages and future damages. Defendant released contaminants "into the subsurface soils and groundwater under the Leased Premises and the Center." (Compl. ¶ 9). The Center comprises more than the Leased Premises. (Compl. ¶¶ 1-2).

We also find Defendant's argument as to failure to plead nuisance because Defendant was a prior tenant insufficient as a matter of law. Defendant could feasibly be held liable for damages for the nuisance it created while occupying the Leased Premises. *See Nutrasweet Co. v. X-L Eng's Corp.*, 933 F. Supp 1409, 1423 n.8 (N.D. Ill. 1996). Thus, Plaintiff's allegations are sufficient to withstand a motion to dismiss. Accordingly, Defendant's motion to dismiss Counts II and III is denied.

## COUNTS IV-VII

Counts IV-VII of Great Oak's complaint all allege violations of the Illinois Environmental Protection Act ("IEPA"). (Pl.'s Compl., pg. 8-9). This Court must determine, as a threshold matter, whether the Illinois Environmental Protection Act creates a private right of action. Section 22.2 of the IEPA states that "the following persons shall be liable for all costs of removal or remedial action *insured by the State of Illinois or any unit of local government* as a result of a release or substantial threat of a release of a hazardous substance of pesticide..." 415 ILCS5/22.2(f). Nowhere in the statute is a private actor given the express right to sue; enforcement of the statute has been left to the Attorney General or State's Attorney. *See Chyrsler Realty Corp. v. Thomas Indus., Inc.*, 97 F. Supp. 2d 877, 878 (N.D.Ill 2000). Some courts in the

8

Northern District have found that an implied private right of action exists for the IEPA, while others have found no such private right of action. *Compare Krempel v. Martin Oil Mktg., Ltd.,* No. 95 C 1348, 1995 WL 733439 (N.D.Ill.Dec.8, 1995) (Grady, J.); *Midland Life Ins. Co. v. Regent Partners,* No. 96 C 3235, 1996 WL 604038 (N.D.Ill. Oct.17, 1996) (Marovich, J.); *Singer v. Bulk Petroleum Corp.,* 9 F.Supp. 2d 916 (N.D.Ill. 1998) (Alesia, J.) *with Chrysler Realty Corp. v. Thomas Indus., Inc.,* 97 F.Supp.2d 877 (N.D.Ill.2000) (Gettlemen, J.); *Norfolk Southern Railway, Co. v. GEE, Co.,* No. 98 C 1619, 2001 WL 710116 (N.D.Ill. June 25, 20001) (Pallmeyer, J.).

In *Chrysler Realty Corp.*, the Honorable Judge Gettleman examined a 1997 Illinois Appellate Court decision, *NBD Bank*, and a 1999 Illinois Supreme Court case, *Fisher v. Lexington Health Care Inc.*, and came to the conclusion that there is no private right of action under the IEPA. *Chrysler Realty Corp. v. Thomas Indus., Inc.,* 97 F.Supp.2d at 881. Judge Gettleman supported his finding with the fact that the Illinois Appellate Court in *NBD Bank* found no private right of action in the IEPA after applying the same factors the Illinois Supreme Court used in *Fischer* to determine that the Nursing Home Care Act likewise created no private right of action. *Id.* at 880. This Court concludes that the reasoning set forth in the cases finding no private right to action to be persuasive. Accordingly, Counts IV-VII of the Great Oaks complaint are dismissed. Of course, if the Illinois Supreme Court were to hold that such private right of action existed during the pendency of this case Plaintiff may amend his complaint to add back

9

these counts.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion to dismiss Counts I-III but grants Defendant's motion to dismiss as to Counts IV-VII (#5-1).

SO ORDERED:   ENTERED 3-3-03

*Ronald A. Guzman*
HON. RONALD A. GUZMAN
UNITED STATES JUDGE